UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| BLANCHE BURLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:12-CV-067-BG |
| ) | ECF |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant.¹ ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Blanche Burley filed this action *in forma pauperis* and pursuant to 42 U.S.C. § 405(g) complaining of a decision in which the Commissioner of Social Security denied her application for disability insurance benefits. The undersigned has considered the parties' arguments, the administrative record, and the applicable law and now recommends that the district court reverse the Commissioner's decision and remand the case for further administrative proceedings.

**I.      Standards of Review**

The standard under which the Commissioner reviews a claim for Social Security benefits involves a five step sequential evaluation. 20 C.F.R. § 404.1520 (2013). Under the sequential evaluation, an administrative law judge (ALJ) decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id*.

---

¹ On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration, succeeding former Commissioner Michael J. Astrue. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is automatically substituted as Defendant in this case.

In reviewing a decision of the Commissioner, the court must determine whether the decision is supported by substantial evidence from the record as a whole and whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion." *Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

## II.     Procedural History

The long procedural history associated with Burley's claim of disability began on September 22, 2003, the date on which she filed her application for disability insurance benefits. (Tr. 20, 488, 732.) She claims she became disabled on March 3, 2003, and quit working because of problems associated with her vision, diabetes, heart condition, depression, and pain. (Tr. 69–74, 85.) An ALJ held a hearing two years later on September 6, 2005, and issued a decision on January 26, 2006, finding Burley not disabled. (Tr. 632–79, 488–98.) Burley appealed to the Appeals Council, and the Appeals Council remanded the case because the ALJ had not addressed the severity of all Burley's impairments, erred in assessing her credibility, and did not provide rationale for finding that Burley could perform light work. (Tr. 504–04.)

On remand a different ALJ held a hearing on July 18, 2007, and issued a decision on October 25, 2007, again denying Burley's application. (Tr. 20–31, 682–73.) After the Appeals Council declined review, Burley filed an appeal in this court arguing that (1) the ALJ failed to find that her depression and neuropathy were severe impairments and (2) the ALJ's fifth step determination was not supported by substantial evidence. (Tr. 749–50.) The undersigned rejected Burley's first argument and found that her depression and neuropathy were not "severe" as that term

2

is defined by the Social Security Act. (Tr. 750.) However, the undersigned agreed with Burley in regard to the ALJ's fifth step determination. The undersigned specifically found that the ALJ's determination that Burley could work as a Holter scanner technician and cardiac monitor technician was not supported by substantial evidence in part because a medical expert testified at the hearing that Burley's corrected visual acuity was 20/40 in one eye and 20/70 in the other eye and that the visual impairments could interfere with performing "'close work requiring a lot of reading or working on a computer.'" (Tr. 750–51.) For these reasons, the court entered an order reversing the Commissioner's decision and remanding the case for further proceedings on March 31, 2010. (Tr. 748–54.)

On remand the ALJ held another hearing and entered judgment finding again that Burley was not disabled. (732–46, 1629–69.) The Appeals Council denied review (Tr. 724–26) and Burley filed this appeal claiming the ALJ erred at the second and fifth steps of the sequential disability evaluation. As the evidence showed in Burley's first appeal to this court, the evidence shows in the case now before the court that the ALJ did not err at the second step of the sequential disability evaluation but that he erred at the fifth step of the evaluation.

### III. <u>Preliminary Issues</u>

The federal government provides disability insurance benefits in the form of monthly cash payments to an individual who (1) is insured under the program by virtue of the fact that he has paid into the program for a certain period of time and remains covered under the program and (2) is disabled. 42 U.S.C. § 423(a)(1) (2013). Thus, a claimant is not entitled to disability insurance unless he establishes that he was disabled on or before the date he was last insured. *See Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) (citation omitted). Burley's insured status expired on

March 31, 2005. (Tr. 733.) The relevant time period in this case is therefore the period of time between March 3, 2003, the date on which Burley claims she became disabled, and March 31, 2005, the date on which she was last insured under Title II of the Social Security Act.

### IV. The ALJ's Step Two Determination

Burley argues the ALJ erred in refusing to find that her mental impairments were severe at step two of the sequential evaluation. In connection with her argument, she points to evidence she submitted during the remand phase and claims the ALJ refused to consider the evidence and further claims the evidence was not added to the record.

Burley's arguments must be rejected on a number of grounds. First, contrary to Burley's claims, the evidence was included in the record. (Tr. 837–1626.) Second, as the ALJ noted at the hearing, the evidence does not relate to the period between March 3, 2003, and March 31, 2005, the time period at issue in this case. (Tr. 837.) The new evidence consists of approximately 830 pages of medical data related to the period beginning 1983 and ending 1994 and beginning 2007 and ending 2010. (Tr. 794–1626.)

The new evidence shows that Burley underwent treatment for a number of impairments after the relevant time period. The records specifically show that she was diagnosed and/or treated for, among other things, chronic kidney disease, renal insufficiency, and chronic renal failure; chest pain, chronic heart problems, and congestive heart failure; peripheral vascular disease; hypertension; diabetes; edema; morbid obesity; migraines; peptic ulcer disease; irritable bowel syndrome; spinal stenosis; chronic pain; carpal tunnel syndrome; asthma; depression; and skin ulcers and infections. (Tr. 840, 855, 907, 911, 963, 965, 1184, 1223, 1286, 1370, 1554, 1566, 1570, 1618.) The records also show that Burley underwent dialysis; was admitted to hospitals on occasion for treatment of her

4

heart condition; and suffered an ulcer on her left foot that caused infection and gangrene and ultimately amputation of her lower left leg. (Tr. 967–69, 983, 1279.)

The new evidence certainly shows that Burley suffered from severe physical impairments that have caused significant deterioration in her health. However, nothing in the new evidence demonstrates that she suffered from severe mental impairments during the relevant time period. Of the twenty-three pages, two do not reference any mental impairments and are therefore irrelevant. (Tr. 292, 905.) On six pages physicians indicate that Burley has a history of depression. (Tr. 933, 939, 959, 1563, 1594, 1596.) On a few other pages physicians include depression among lists of other conditions Burley suffered. (Tr. 846, 933, 1567.) There are also notations showing that physicians prescribed medications for Burley's depression. (Tr. 930, 937, 941, 1551–52, 1554–56.) In addition, in November 2010 a physician noted that Burley's depression was worsening, and in December 2010 he noted that she had not been able to buy the medication he prescribed for her depression. (Tr. 1550, 1554.) He also noted, however, "She is very happy and her mood is stable." (Tr. 1550.)

An impairment is severe if it would have more than a minimal effect on the individual and be expected to interfere with the individual's ability to work. *Stone v. Heckler*, 752 F.2d 1099, 1101–02 (5th Cir. 1985). The evidence establishes that physicians have indicated in examination notes that Burley suffers from depression and have, at times, treated the depression with medication. However, nothing in the evidence demonstrates that Burley suffered from severe depression during the relevant two-year period at issue in this case. The evidence in the record prior to remand shows that Burley had a history of depression and that her depression was sometimes treated with medication, and the new evidence shows the same.

5

In addition, Burley's claim that the ALJ erred in failing to find her mental impairments severe is barred by the law of the case doctrine. "Under the law of the case doctrine, an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). Put another way, the law of the case doctrine precludes a lower tribunal from reexamining on remand an issue that was decided by the remanding tribunal. *Id*. The law of the case doctrine applies to cases remanded from federal court to administrative agencies. *See, e.g., Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010); *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009); *Brown v. Astrue*, 597 F. Supp. 2d 691, 696 (N.D. Tex. 2009) (noting that the Court of Appeals for the Fifth Circuit has not applied the law of the case doctrine to a disability claim but acknowledging that other circuits have done so). An issue becomes subject to the law of the case doctrine when the remanding court either explicitly or implicitly decides the issue. *Brown*, 597 F. Supp. 2d at 699–01. This court explicitly rejected Burley's argument that her depression was severe in the Order of Reversal and Remand entered on March 31, 2010, and specifically found that Burley's depression was not a severe impairment during the relevant time period. (Tr. 749–50.) The issue as to whether Burley's depression was severe is therefore subject to the law of the case doctrine; accordingly, the ALJ was bound by the determination in the Order of Reversal and Remand and precluded from making contrary determinations. The ALJ did not err in finding that Burley's mental impairments were not severe.

**V.     The ALJ's Step Five Determination**

At the fourth and fifth steps of the sequential evaluation, the ALJ must determine whether, given the claimant's residual functional capacity, he can perform either his past work or other work.

6

20 C.F.R. § 404.1545(a)(5). The term "residual functional capacity" is used to indicate the most a claimant can do despite his impairments. *Id*. § 404.1545(a)(1). In determining residual functional capacity, the Commissioner considers the individual's ability to meet the physical and mental demands, sensory requirements, and other requirements of work. *Id*. § 404.1545(a)(4).

The ALJ determined that Burley had the residual functional capacity during the relevant time period to perform sedentary work that can be performed in an environment with no temperature extremes and with a visual deficit that does not preclude fine detailed vision. (Tr. 743.) Based on testimony from a vocational expert, he then determined that Burley would be capable of working as a cardiac monitor/ultra scanning technician, hospital admitting clerk, and medical receptionist. (Tr. 745.)

As this court found in the prior appeal, Burley suffers from limited vision. She alleged in application documents that "poor eyesight" limited her ability to work. (Tr. 85, 750.) She told a physician that she used a magnifying glass to look up telephone numbers; testified and indicated in application documents that she used a magnifying glass to read; and claimed she did not drive because she could not pass the vision test required to obtain a license. (Tr. 750.) A medical expert testified that Burley's visual acuity was 20/40 in one eye and 20/70 in the other eye. *Id*.

Burley argues the ALJ's residual functional capacity determination in the decision now before the court does not account for limitations that result from her visual impairments. In support of her argument she cites testimony from ophthalmologist John Elpar, M.D., who acknowledged at the hearing that a person with Burley's visual deficits would experience problems with depth perception. (Tr. 1659–60.) She also cites Dr. Elpar's testimony that her vision problems would cause eye strain that would result in the need for breaks during prolonged work. (Tr. 1660.)

7

Burley contends that based on Dr. Elpar's testimony, the ALJ should have included limitations in his residual functional capacity determination that would accommodate her problems with depth perception and her need to rest her eyes during prolonged work. The Commissioner acknowledges Dr. Elpar's testimony regarding eye strain but points out that the doctor also testified that "no pain would be involved." (Def.'s Br. at 7.)  The Commissioner also acknowledges Dr. Elpar's testimony regarding the problems Burley experiences with depth perception, but counters Burley's argument by contending that Dr. Elpar also testified that Burley's ability to perform office work involving typing, computers, and reports would not be affected by her diminished eyesight. She argues that Dr. Elpar's testimony establishes that Burley would be capable of performing the office and computer jobs the ALJ identified.

The Commissioner's argument must be rejected. Dr. Elpar's testimony regarding the strain prolonged work would have on Burley's eyes and her problems with depth perception is medical opinion evidence. 20 C.F.R. § 404.1527(e)(2)(I). As such, the ALJ was required to evaluate the opinions. 20 C.F.R. § 404.1527(e)(2)(I). He did not do so. He ignored Dr. Elpar's opinion and found that Burley had no functional limitations as a result of her visual deficit. (Tr. 743.) An ALJ is not free to make his own medical conclusions about the limitations of a claimant's impairments. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

The ALJ then failed to incorporate the limitations from Dr. Elpar's testimony into the hypothetical question he posed to the vocational expert. The Commissioner's argument that Dr. Elpar testified that Burley's ability to perform office work would not be affected by her diminished eyesight does not salvage the legal error the ALJ committed in this case. It is not the responsibility of a testifying medical expert to provide an opinion as to whether the claimant can

8

perform particular jobs. Testifying medical experts, such as Dr. Elpar, advise the ALJ regarding the impact of the claimant's medical impairments on his residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cr. 1995). In contrast, a testifying vocational expert advises, based on the claimant's residual functional capacity, as to what particular jobs the claimant can perform. *See Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (acknowledging that "a vocational expert is called to testify because of his familiarity with job requirements and working conditions"). Thus, it is immaterial that Dr. Elpar believed Burley could perform the tasks associated with office work; his expertise does not lie in the vocational tasks of particular jobs. That expertise lies with the vocational expert. *Id*. at 132. Because the limitations from Dr. Elpar's testimony were not presented in the hypothetical question the ALJ posed to the vocational expert, it is unknown whether an individual with limitations associated with depth perception and eye strain could perform the visual demands involved with office work and reading a computer during an eight-hour day. At the fifth step of the sequential disability evaluation, the Commissioner carries the burden of showing that the claimant can perform relevant work despite his impairments. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner did not carry that burden in this case.

## VI.     Recommendation

It is the court's duty to determine whether the Commissioner's decision is supported by substantial evidence and that it was reached through proper legal standards. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The Commissioner's step five determination was not reached through the application of proper legal standards and is not supported by substantial evidence. The undersigned therefore recommends that the district court reverse the Commissioner's decision and remand Burley's case for further administrative proceedings.

## VII.  Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:      April 26, 2013.

*[signature]*
NANCY M. KOENIG
United States Magistrate Judge

10